People v Cordona (2025 NY Slip Op 51538(U))

[*1]

People v Cordona

2025 NY Slip Op 51538(U)

Decided on September 25, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 25, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Peter Cordona, Defendant.

CR-010932-25NY

Alvin L. Bragg, Jr., District Attorney, New York County (Gabriela Menashe of counsel), for plaintiff. 
Neighborhood Defender Service of Harlem, New York City (Jamie Jenkins of counsel), for defendant.

Ilona B. Coleman, J.

The defendant moves this court to find the People's certificate of compliance and statement of readiness invalid and to dismiss his case pursuant to CPL §§ 30.30 (1) (b) and 170.30 (1) (e). Specifically, the defendant argues that the People failed to satisfy their discovery obligations under CPL § 245.20 in that they failed to timely provide names and contact information for civilian witnesses, text messages about the allegations, a law enforcement witness list, and disciplinary records for a non-testifying police officer. The People oppose, arguing that some of the material at issue is not discoverable, that they exercised due diligence regardless of any lapses, and, ultimately, that they timely filed valid certificates of compliance and statements of readiness for trial.
I. Relevant Facts
The defendant is charged with violating PL §§ 120.00(1) and 121.11 for allegedly squeezing the complainant's neck and causing her to experience substantial pain, on March 25, 2025. On April 4, 2025, the complainant walked into an NYPD precinct to report the incident. With her body-worn camera activated, Police Officer Wendy Floresjay spoke with the complainant. Over a 40-minute period, PO Floresjay interviewed the complainant about the incident and helped her fill out a complaint report and a domestic incident report (DIR). Later that day, PO Floresjay and another officer, PO Lesner Delgado, went to the defendant's home to arrest him. When the officers arrived, the defendant asked them if they had come to serve his wife with divorce papers, a statement for which the People provided notice pursuant to CPL § 710.30 (1) (a).[FN1]
The officers arrested the defendant, and PO Delgado was designated as the arresting officer.
The defendant was arraigned on April 5, 2025. That day, the People received the arrest [*2]report and complaint report from NYPD. On April 8, 2025, the People — specifically, an ADA and a notetaker, assisted by an interpreter — interviewed the complainant. In the interview, the complainant spoke about the alleged incident as well as the circumstances leading up to it and its aftermath. During the interview, the complainant mentioned that, prior to the alleged assault, she had "sent messages to a teacher [at her granddaughter's school] that [she] needed help because of [the defendant's] bad treatment." After the incident, the complainant said, she went to the school and "she" — the person is not named — "asked why [the complainant's] eyes were swollen." The unnamed person said that she would speak with "the coordinator Patricia," who helped her find a shelter. The People did not ask for, nor did the complainant offer, any further details about these individuals. 
The People continued their efforts to gather discovery on April 17, 2025. Over the next two months, the People (both the assigned ADA and the Litigation Support Unit of the DA's Office) contacted the NYPD at least five times to obtain discoverable materials, including texting, emailing, and scheduling a call with the arresting officer to locate specific outstanding discovery.
On June 16, 2025, the People produced discovery to the defense. The discovery included body-worn camera footage, police paperwork, notes from the People's interview with the complainant, text messages with the arresting officer and the complainant, and disciplinary records for PO Delgado but not PO Floresjay. On June 17, 2025, the People filed their certificate of compliance (COC), certificate of readiness (COR), and automatic discovery form (ADF) with the court. They attempted to electronically serve the same documents on the defense but failed to attach the ADF.
On June 27, 2025, defense counsel notified the People that they had not provided the ADF. The People replied to counsel the same day but attached a copy of the ADF that did not include a witness list. Defense counsel pointed out the omission that same day, but the People neglected to respond, apparently "as a result of long-term construction in the assigned assistant's office." On July 7, 2025 defense counsel followed up on their request, and the ADA provided the witness list that day. The witness list contained two names: PO Delgado and the complainant.
On July 8, 2025, defense counsel emailed the People asking for the name and contact information of the person with whom the complainant spoke at her granddaughter's school after the alleged incident. The People then called the complainant and asked her who had assisted her, and the complainant responded that the principal of the school, Lisa Velasquez, had assisted her. On July 14, 2025, the People provided this name to the defense. Defense counsel did not respond further to the ADA but instead, on July 17, 2025, requested a motion schedule. On August 1, 2025, defense counsel thereafter filed this motion stating, among other things, that the People had failed to obtain and provide Patricia's full name and contact information, Ms. Velasquez's contact information, and the text messages the complainant sent to a school employee about the case.
The People then called the complainant again and asked more specifically about her interactions with the school employees. At that point, the complainant clarified that she has had interactions with three school employees about the defendant: Patricia, Lisa Velasquez, and a third person named Maritza, whom the complainant had texted and asked to talk. After this call, the People provided full names and contact information to the defense along with the complainant's texts to Maritza.
II. Validity of the People's COC
Under CPL § 245.50 (1), the People must affirm in their COC that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." When a defendant challenges a COC, this court will first examine the alleged discovery lapses individually to determine whether and to what extent the People failed to meet their discovery obligations. If the court finds any discovery violations, the court will then examine the violations in the context of "the totality of the [People's] efforts to comply with the provisions of [Article 245]" to determine whether the People nevertheless "exercised due diligence and acted in good faith" in discharging their duties (CPL 245.50 [5], [6]; see also People v Bay, 41 NY3d 200, 211 [2023]).
1. The People's Compliance with CPL § 245.20
CPL § 245.20 defines the discovery obligations the People must satisfy before filing a COC. The People must "disclose to the defendant" several categories of "material and information in the possession, custody or control of the prosecution" (CPL 245.20 [1]), but they must also make "a diligent, good faith effort" to obtain such discoverable material and information "where it exists but is not within [their] possession, custody or control" (CPL 245.20 [2]). The defendant specifically alleges that the People failed to timely provide three categories of material and information that the defendant claims are discoverable: (1) names and contact information for civilian witnesses, (2) the text messages the complainant sent to a school employee, (3) a witness list, and (4) disciplinary records for a non-testifying police witness. The court will examine each of these alleged lapses in turn.
Witness Names and Contact Information
The defendant argues first that the People failed to diligently obtain and disclose witness names and contact information discoverable under CPL § 245.20 (1) (c). Specifically, the defendant argues that the People — having learned that the complainant discussed the allegations with a school employee, who in turn encouraged the complainant to report the incident — had an obligation under CPL § 245.20 (2) to inquire further about the school employee, obtain her name and contact information, and disclose it to the defense. The People do not contradict this argument but instead argue that the lapse should not be a significant factor in assessing their diligence.
As the defense argues and the People effectively concede, the People did have an obligation to obtain and disclose the witness names and contact information at issue (CPL 245.20 [1] [c]; [2]). The People had notice from the complainant that she told a school employee about the alleged incident and that this employee then helped her find a safe place to stay. The prosecution thus knew that at least one school employee "[had] evidence or information relevant to [an] offense charged" (CPL 245.20 [1] [c]). While the name and contact information were not, in fact, in the People's "possession, custody or control" (CPL 245.20 [1]), the People had a duty to made efforts to obtain them (CPL 245.20 [2]). By neglecting to ask appropriate follow-up questions in the interview with the complainant, the People failed to fulfill their discovery obligations.
There are, however, factors that mitigate the significance of this lapse. The person to whom the complainant told her story was not an eyewitness to the alleged incident. The People did not plan to have her testify, and indeed she would have little, if any, admissible evidence to [*3]offer at trial. Nor is there any reason to think that she would be an impeachment witness. In her first interview with the complainant, it is understandable that the assigned ADA was more focused on the issues relating to the core of the case rather than ancillary discovery issues. Once notified by the defendant of the lapse, the ADA followed up with reasonable diligence. 

Text Messages
The defense next argues that the People violated their obligation to obtain and disclose text messages the complainant sent to a third party (CPL 245.20 [1] [e]; [2]). In her conversation with the ADA, the complainant also mentioned that she had previously sent a message to a teacher asking for help because of the defendant's "bad treatment." As with the witness names and contact information, the People should have made efforts to obtain these messages, but this lapse is not significant. The notes from this conversation suggest that the complainant sent the messages before the alleged assault. Thus, while the People had reason to believe the messages might be "statements related to the subject matter of the case" (CPL 245.20 [1] [e]), the messages would have at best provided background information about the parties' relationship — not substantive information about the incident itself. When the defense asked about the text messages, the People responded with reasonable diligence and obtained them. 

Witness Lists
Next, the defendant argues that the People violated their discovery obligations in that they failed to provide a police witness list as required under CPL § 245.20 (1) (d). The People acknowledge that they were required to provide a law enforcement witness list and did not do so. Rather, the People explain that they twice inadvertently attached the wrong file in emails to the defense, then failed to respond to a follow-up email from the defense. The court does not condone this lack of attention to detail, but this sort of mistake will rarely be a significant factor in assessing the People's overall diligence.
Further, in this case, the police witness list was not an especially significant piece of discovery. Only two police officers played any significant role in the case, and both are named elsewhere in the People's court filings. On the facts of this case, whether the People intend to call one or the other of those officers has little if any bearing on the defendant's ability to prepare for trial. 

Disciplinary Records for Non-Testifying Police Officer
Finally, the defendant argues that the People should have disclosed disciplinary records for PO Floresjay even though the People do not intend to call her as a witness. The defendant argues that the materials are discoverable under CPL § 245.20 (1) (k) (i) and (iii), which require disclosure of materials that tend to "negate the defendant's guilt as to a charged offense" or "support a potential defense to a charged offense," respectively. In response, the People argue that the material could only be discoverable if PO Floresjay was testifying.
The People are incorrect: information that tends to "negate the defendant's guilt" or "support a potential defense" must obviously be disclosed regardless of which witnesses the People intend to call (CPL 245.20 [1] [k] [i], [iii]). Such information is relevant not merely as impeachment, as is the case with material discoverable pursuant to CPL § 245.20 (1) (k) (iv), but as substantive evidence.
However, on the facts of this case there is very little chance that Officer Floresjay's disciplinary records would contain material discoverable under subparagraphs (k) (i) and (iii). Disciplinary records could only "negate the defendant's guilt" if they involved the investigation of this very case, and there is no indication that any such investigation occurred (CPL 245.20 [1] [*4][k] [i]). The defendant suggests that if the officer's disciplinary records showed, for example, a history of encouraging witnesses to fabricate allegations, the records would "support a potential defense" (CPL 245.20 [1] [k] [iii]). This speculative defense, however, does not appear to be consistent with the facts of this case. Also, the defendant has body-worn camera footage of the complainant's initial conversation with Officer Floresjay, but the defendant does not allege that the footage shows any impropriety whatsoever.
Regardless of the records' discoverability under CPL § 245.20 (1) (k), their nondisclosure is not a negative factor in assessing the People's diligence on the particular facts of this case (see People v Jawad, 84 Misc 3d 31, 35 [App Term, 2nd Dept 2024], lv denied, 42 NY3d 1080 [2025]). That said, given the People's apparent misunderstanding of CPL § 245.20 (1) (k) (i) and (iii), and the fact that the People do not claim to have reviewed even a summary of Officer Floresjay's disciplinary records, the court does believe some remedial action is appropriate. The People are thus ORDERED to review Officer Floresjay's disciplinary records, provide anything discoverable under CPL 245.20 (1) (k) (i) or (iii) to the defense, and thereafter submit a supplemental affirmation to this court describing their review, due two weeks from the date of this order.
2. The People's Diligence and Reasonableness
Even where the People have not satisfied all of their discovery obligations, their COC will not be invalidated where they have "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material" (CPL 245.50 [6]; see also Bay, 41 NY3d at 211). In determining whether the People acted with due diligence, the court must consider:
[T]he efforts made by the prosecutor to comply with [their discovery obligations]; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
(CPL § 245.50 [5] [a]; see also Bay, 41 NY3d at 212).
On balance, this court concludes that the People exercised due diligence prior to filing their COC. This is not an especially complex case, and the amount of discovery involved is on the low end. The allegations include only a single act against a single complainant. Still, the People made significant and prompt efforts to comply with their discovery obligations. The vast majority of discovery was disclosed prior to the People filing and serving their COC, and only a couple of relatively insignificant items were disclosed belatedly. The court does not fault the People for inadvertently withholding the witness list or for concluding that Officer Floresjay's disciplinary history was not discoverable. The only negative factor in assessing the People's diligence is their failure to follow up when the complainant mentioned discussing and texting about the defendant with employees at her granddaughter's school. But again, these individuals were not eyewitnesses, and their potential value as witnesses — both to the People's case and the defendant's — appears to be minimal. This sole negative factor does not outweigh the People's [*5]significant efforts to satisfy their discovery obligations under CPL § 245.20.
Overall, the People "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed pursuant to [CPL § 245.20]" (CPL 245.50 [6]). The defendant's motion to deem the People's COC invalid is therefore denied.
III. CPL § 30.30
In this case, in which the defendant is charged with an A misdemeanor and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). The parties agree that the 73 days between the defendant's arraignment on April 5, 2025 and the filing of the People's COC and COR on June 17, 2025 are chargeable to the People.
Because the People's June 17 COC was valid, their COR was also valid, and the period from June 17 through the next court date is not charged to the People. The defense does not allege that any additional time is chargeable to the People.
The court finds that only 73 days are charged to the People, and the defendant's motion to dismiss is therefore denied.
This constitutes the decision and order of this court.
Dated: September 25, 2025
New York, NY
Ilona B. Coleman, J.C.C.

Footnotes

Footnote 1:The defendant has not moved to suppress this statement.